# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1436**
**CA 14-00242**
PRESENT: SCUDDER, P.J., CENTRA, CARNI, AND SCONIERS, JJ.

---

CHRISTOPHER JOHNSON, INDIVIDUALLY AND AS PARENT
AND NATURAL GUARDIAN OF ZACHARY JOHNSON,
PLAINTIFF-RESPONDENT,

V                                        MEMORANDUM AND ORDER

GUTHRIE MEDICAL GROUP, P.C., ET AL., DEFENDANTS,
INGRID STERLING, M.D., PRE-EMPTION FAMILY
MEDICINE, J. MICHAEL BELL, M.D., P.C., CYNTHIA
SKOVRINSKI, MS, FNPC, AND RICHARD J. AMSEL, M.D.,
DEFENDANTS-APPELLANTS.

---

LEVENE GOULDIN & THOMPSON, LLP, VESTAL (LAUREN KILEY SALEEBY OF
COUNSEL), FOR DEFENDANT-APPELLANT INGRID STERLING, M.D.

HIRSCH & TUBIOLO, P.C., ROCHESTER (BRYAN S. KORNFIELD OF COUNSEL), FOR
DEFENDANTS-APPELLANTS PRE-EMPTION FAMILY MEDICINE, J. MICHAEL BELL,
M.D., P.C. AND RICHARD J. AMSEL, M.D.

DONAHUE, SABO, VARLEY & HUTTNER, LLP, ALBANY (KENNETH G. VARLEY OF
COUNSEL), FOR DEFENDANT-APPELLANT CYNTHIA SKOVRINSKI, MS, FNPC.

CONWAY & KIRBY, PLLC, LATHAM (DANA BONIEWSKI OF COUNSEL), FOR
PLAINTIFF-RESPONDENT.

---

Appeals from an order of the Supreme Court, Onondaga County (Deborah H. Karalunas, J.), entered October 16, 2013. The order, among other things, denied the motions of defendants Ingrid Sterling, M.D., Pre-Emption Family Medicine, J. Michael Bell, M.D., P.C., Cynthia Skovrinski, MS, FNPC, and Richard J. Amsel, M.D., to preclude certain testimony.

It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.

Memorandum: Plaintiff commenced this medical malpractice action in July 2006, alleging, inter alia, that defendants Ingrid Sterling, M.D., Pre-Emption Family Medicine, J. Michael Bell, M.D., P.C., Cynthia Skovrinski, MS, FNPC, and Richard J. Amsel, M.D. (collectively, defendants) failed to timely diagnose his son, born April 6, 2001, with melanoma. Following removal of the child's stage IV tumor in August 2004, further surgery was required to remove lymph nodes and his fifth finger to the wrist. Thereafter, the child underwent one month of a high-dose treatment with Interferon-alpha

(IFN-a), followed by 11 months of a low-dose IFN-a treatment.  In July 2013, plaintiff served a fifth and sixth supplemental bill of particulars and expert disclosure, alleging that the treatment with IFN-a caused long-term cognitive deficits, resulting in future loss of earnings and future life care expenses for the child.  In various motions, defendants moved to strike the fifth and sixth bills of particulars; to preclude the expert disclosure; and to preclude expert testimony regarding the alleged causal relationship between IFN-a treatment and long-term cognitive deficits or, in the alternative, for a *Frye* hearing (*see Frye v United States*, 293 F 1013).  Supreme Court denied the motions.  Defendants, as limited by their briefs, contend that the court erred in denying the motions to preclude expert testimony or for a *Frye* hearing.

As a preliminary matter, we note that the court's pretrial order is appealable inasmuch as it "clearly involves the merits of the controversy" with respect to medical causation of alleged long-term cognitive defects, and "affects a substantial right" of the parties (*Muhammad v Fitzpatrick*, 91 AD3d 1353, 1353-1354; *see* CPLR 5701 [a] [2] [iv], [v]; *Parker v Mobil Oil Corp.*, 16 AD3d 648, 650, *affd* 7 NY3d 434, *rearg denied* 8 NY3d 828).

With respect to the merits, we conclude that the court did not abuse its discretion in denying that part of defendants' motions seeking to preclude the expert testimony of a physician and a neuropsychologist.  Defendants supported their motions with the expert affidavit of a board-certified neuropsychologist, who opined that the theory of causation for the child's cognitive deficits espoused by plaintiff's experts, i.e., that the IFN-a treatment caused those deficits, is not generally accepted in the scientific community.  Defendants' expert acknowledged that chemotherapy can cause damage to healthy brain tissue and result in cognitive/neuropsychological deficits, but he disputed that IFN-a is a chemotherapeutic agent.  In response, plaintiff provided, inter alia, the redacted affidavit of his undisclosed expert, a board-certified physician in pediatrics and pediatric hematology-oncology, who opined with a reasonable degree of medical certainty that the child's neurocognitive, educational, and emotional disabilities were caused by the use of IFN-a to treat melanoma and that such theory of causation is "supported in the scientific community."  Plaintiff's undisclosed expert disputed the assertion of defendants' expert that IFN-a is not a chemotherapeutic agent.  Plaintiff's undisclosed expert supported his/her theory of causation with numerous articles discussing the negative cognitive effects experienced by adults during and after treatment with IFN-a and the negative long-term effects of chemotherapy treatment on the developing brains of children.  Plaintiff's undisclosed expert conceded that there are no studies regarding the long-term cognitive effects on children from IFN-a treatment.

We conclude that the court properly denied that part of defendants' motions seeking a *Frye* hearing inasmuch as "the theory of causation set forth by plaintiff's expert[s] . . . is not premised on novel science but, rather, is premised on generally accepted scientific principles and existing data . . . *Frye* is not concerned

with the reliability of a certain expert's conclusions, but instead with whether the expert[']s deductions are based on principles that are sufficiently established to have gained general acceptance as reliable" (*DieJoia v Gacioch*, 42 AD3d 977, 979 [internal quotation marks omitted]).  Instead, we consider whether there is a proper foundation for the evidence to be admitted at trial (*see Parker*, 7 NY3d at 447).  Here, we conclude that the court did not abuse its discretion in determining that there is a proper foundation for that evidence (*see Jackson v Nutmeg Tech., Inc.*, 43 AD3d 599, 602).  The experts laid a foundation for the theory that the child's cognitive deficits were caused by treatment with IFN-a with generally accepted medical principles of the cognitive effects on adults treated with IFN-a, a chemotherapeutic agent, and the cognitive effects of chemotherapy on the developing brain of a child.  " '[T]he underlying support for the theory of causation [need not] consist of cases or studies considering circumstances exactly parallel to those under consideration in the litigation.  It is sufficient if a synthesis of various studies or cases reasonably permits the conclusion[s] reached by the plaintiff's expert[s]' . . . 'The fact that there was no textual authority directly on point' . . . 'is relevant only to the weight to be given to the testimony, but does not preclude its admissibility' " (*DieJoia*, 42 AD3d at 979-980).

Entered:  February 6, 2015                    Frances E. Cafarell
                                              Clerk of the Court