■ CARL REDCROSS et al., as Parents and Guardians of TRAVIS REDCROSS, an Infant, Appellants, v STATE OF NEW YORK, Respondent. (And Four Other Related Claims.) [660 NYS2d 211] —Spain, J. Appeal from a judgment of the Court of Claims (Mega, P. J.), entered November 21, 1995, upon a decision of the court following a bifurcated trial in favor of the State on the issue of liability.

On July 31, 1986 at approximately 6:00 P.M., Donna Burkart,

who was traveling with her then 11-month-old daughter, Amanda Burkart, in a child seat on the back of her bicycle, and her then six-year-old brother, Travis Redcross, also traveling by bicycle, attempted to cross Western Avenue at the intersection of McKown Road and Western Avenue in the Town of Guilderland, Albany County. The record reveals that prior to entering the intersection the cyclists waited for the traffic light facing McKown Road to turn green and for the traffic traveling on Western Avenue to come to a stop. The cyclists then proceeded to cross the intersection in a northerly direction; however, when they reached the fourth of Western Avenue's four lanes they were hit by a vehicle traveling west on Western Avenue driven by Herman Solomon. The cyclists sustained serious and permanent injuries. Solomon testified that as he approached the intersection the traffic light facing east on Western Avenue was red; he did not slow down, but instead momentarily took his foot off of the gas pedal and resumed accelerating as soon as the light turned green. Notably, Solomon testified that although he saw the traffic light he never saw the cyclists.

Claims were filed by Burkart, individually and on behalf of Amanda, and by the parents of Travis, individually and on behalf of Travis, against the State for personal injuries sustained, alleging that the State was negligent in failing to regulate the traffic light at the intersection so as to permit safe crossing from one side to the other side of the highway and in placing a pedestrian push-button control facing Western Avenue instead of facing McKown Road. A bifurcated trial on the issue of liability was held and before rendering a decision the Trial Judge died. The parties then stipulated to have the matter decided on the basis of the trial record before another Judge. Thereafter, the Court of Claims (Mega, P. J.) dismissed the claims after finding that the State was not negligent and judgments were entered thereon. Only the parents of Travis (hereinafter collectively referred to as claimants) have appealed.

We affirm. Claimants' primary contention is that the weight of the evidence demonstrated that the State Department of Transportation breached its duty to exercise reasonable care in placing the pedestrian control button and the sign calling attention to the button facing Western Avenue instead of facing McKown Road and, therefore, that the Court of Claims erred by dismissing claimants' claim. The State has a duty to maintain its highways in a reasonably safe condition (*see*, *Friedman v State of New York*, 67 NY2d 271, 283; *Hough v*

*State of New York*, 203 AD2d 736, 736-737); however, "the State is not the insurer of the safety of its roads and no liability will attach unless the ascribed negligence of the State in maintaining its roads in a reasonable condition is the proximate cause of the accident" (*Hearn v State of New York*, 157 AD2d 883, 885, *lv denied* 75 NY2d 710).

It is also well settled that "in the field of traffic design engineering, the State is accorded a qualified immunity from liability arising out of a highway planning decision" (*Friedman v State of New York*, *supra*, at 283). "Under this doctrine of qualified immunity, a governmental body may be held liable when its study of a traffic condition is plainly inadequate or there is no reasonable basis for its traffic plan" (*id.*, at 284 [citation omitted]; *see*, *Hough v State of New York*, *supra*, at 737). "To prevail on this theory, claimant[s] had the burden of proving that * * * the placement of the [button and sign] 'evolved without adequate study or lacked [a] reasonable basis'" (*Niles v State of New York*, 201 AD2d 774, 774-775, quoting *Weiss v Fote*, 7 NY2d 579, 589). Furthermore, this Court will not "go behind the ordinary performance of planning functions by the officials to whom those functions were entrusted" (*Weiss v Fote*, *supra*, at 584).

Here, the record reveals that a pedestrian control button and a sign reading "PUSH BUTTON FOR GREEN LIGHT" were located on a pole at the corner of McKown Road and Western Avenue; the need for this type of device was determined after the State did studies of the intersection and its traffic patterns. Both the sign and the pedestrian control button faced Western Avenue and clearly did not face pedestrian traffic arriving at Western Avenue from McKown Road. Although Burkart lived in the neighborhood and had crossed Western Avenue at that same intersection on numerous occasions, she testified that she was not aware of the presence of the button and, therefore, did not press it. At trial claimants' expert, a civil engineer, opined that "the [S]tate failed to properly install a traffic signal pedestrian activated system at this intersection. They violated the [Manual of Uniform Traffic Control Devices] and good engineering practice in that the pedestrian activation system was clearly not visible to a pedestrian coming from McKown Road". The expert also stated that he found no rational basis for the placement of the pedestrian control button. The State also presented the testimony of an expert witness who was also a civil engineer; he opined that the pedestrian control button and sign combination located at McKown Road complied with the Manual of Uniform Traffic Control Devices and with sound

engineering judgment. He further stated "that [the pedestrian control button and sign combination were] visible from the vantage of a person about to cross the street, that it clearly defines the path of travel, the crosswalk area that it controls and * * * it's clearly visible from the opposite corner as well". Further, the supervising mechanic who chose the location of the button testified that he relied on a number of factors in making his determination, to wit, accessibility to the button, location on the pole of the traffic light control cabinet, presence of curbing, absence of sidewalks, driveways to the west of the pole, potential snow removal and visibility to all intending to cross Western Avenue.

Where, as here, findings in a nonjury trial are based upon considerations other than the credibility of witnesses, such as, *inter alia*, consistency of testimony or documentary evidence, an appellate court is equally authorized to draw its own inferences and make its own findings based upon the evidence in the record (*see, Northern Westchester Professional Park Assocs. v Town of Bedford*, 60 NY2d 492, 499; *Abrahami v UPC Constr. Co.*, 224 AD2d 231, 233). In the instant matter the Court of Claims was presented with conflicting expert testimony and determined that the judgment of the State's expert was "just as logical, if not more so, than [claimants' expert]". Having reviewed the same record, it is our view that the Court of Claims' findings and conclusions are not against the weight of the evidence or contrary to law and, therefore, should not be disturbed. The record reveals that the employees of the Department of Transportation who installed the pedestrian control button and sign were familiar with the intersection and its unique features. In our view, therefore, the record does not support claimants' contention that respondent failed to comply with the manual. There is ample evidence in the record to support the Court of Claims' conclusion that the State's pedestrian control button decision was rational and that the traffic light itself was not defective nor in violation of any applicable standards for timing vehicular traffic control devices.

We also agree with the Court of Claims that no negligence on the part of the State contributed to this accident. The proximate cause of the accident was Solomon's failure to exercise due care and not the timing of the lights nor the location of the pedestrian control button. A person riding a bicycle on a roadway is, with few exceptions, entitled to all of the rights and bears all of the responsibilities of the driver of a motor vehicle (*see*, Vehicle and Traffic Law § 1231). Additionally, a vehicle approaching an intersection must yield the right-of-

way to a vehicle (here a bicycle) already in the intersection, and that even with a green light, as here, a driver must exercise reasonable care to avoid a collision with another vehicle in the intersection (*see*, Vehicle and Traffic Law § 1111; 1 NY PJI2d 2:79). Since the cyclists had a green light in their favor when they started across Western Avenue, all Western Avenue traffic was required to yield to them even though they had not yet cleared the fourth lane on Western Avenue before the lights changed to green for traffic heading east and west (*see*, Vehicle and Traffic Law § 1111 [a] [1]).

Finally, although not fully explored by the Court of Claims, we conclude that claimants, who were riding their bicycles on the traveled roadway as they crossed Western Avenue, were proceeding subject to Vehicle and Traffic Law § 1231. As cyclists, claimants were subject to the vehicular traffic control devices at the intersection, i.e., the traffic signal light, which was activated by their presence in the roadway, and not the pedestrian control device in question. In the absence of any evidence that the vehicular traffic control device was negligently installed or maintained, the claims which are based on claimants' assertion that the cyclists were pedestrians are not valid causes of action.

Accordingly, the record fully supports the dismissal of the claims herein.

White, J. P., Casey, Peters and Carpinello, JJ., concur. Ordered that the judgment is affirmed, without costs.